303 So.2d 833 (1974)
Paul B. BARTELS
v.
B. H. ROUSSEL et al.
No. 10168.
Court of Appeal of Louisiana, First Circuit.
November 8, 1974.
Rehearing Denied December 16, 1974.
Writ Refused January 31, 1975.
*834 Wm. Luther Wilson, Baton Rouge, for appellant.
Joseph F. Keogh, Baton Rouge, for appellees.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
LANDRY, Judge.
Plaintiff, Paul M. Bartels (Appellant), appeals from judgment of the trial court recalling a previously issued alternative writ of mandamus and dismissing Appellant's action to compel the Honorable W. W. Dumas, Mayor-President, and the Honorable B. H. Roussel, Director of Finance, City of Baton Rouge, Parish of East Baton Rouge (Appellees), to permit Appellant's examination and inspection of certain alleged public documents pursuant to LSA-R.S. 44:1 et seq. (the Public Records Law). The documents in question consist of completed department and nondepartment budget requests of all departments, agencies, offices and instrumentalities of the City of Baton Rouge-Parish of East Baton Rouge (City-Parish), which will receive funds from the City-Parish for the fiscal year 1975. We reverse and enter a writ of mandamus ordering and directing Appellees to permit Appellant's examination of subject records which we find and declare to be public documents as defined in the applicable statute.
Appellees argue that the Public Records Law is inapplicable herein because the City-Parish Charter, La.Const. Article XIV, Section 3(a), vests the City-Parish with special powers and privileges. It is contended that said constitutional provision is self-executing; that it predominates over general state laws in conflict therewith, and according to its provisions, declares that the records in question are not public records. Alternatively, Appellees maintain that application of the Public Records Law in this instance would constitute an unconstitutional discrimination against the City-Parish and other municipal and parish governmental agencies. It is also urged that application of the Public Records Law in this case would be unconstitutional as a violation of the separation of powers concept of government. In this respect, it is argued that the City-Parish is an executive *835 branch of government created by the constitution and, as such, entitled to the same treatment as the executive, legislative and judicial branches of state government.
The facts are undisputed. Appellee Roussel has in his possession finalized budget requests from every department, agency, office and instrumentality of the City-Parish. The written requests have been bound into four volumes to facilitate their study by Roussel as Director of Finance. Eventually Roussel will make recommendations to the Mayor based on the requests received. Thereafter the Mayor will formulate a budget and submit it to the governing authority for adoption of a budget for the ensuing 1975 fiscal year. Appellant has sought permission to view these documents, make copies thereof and otherwise inspect them, notwithstanding the Mayor has not yet prepared his budget.
LSA-R.S. 44:1 defines public records as follows:
"A. All records, writings, accounts, letters and letter books, maps, drawings, memoranda and papers, and all copies or duplicates thereof, and all photographs or other similar reproductions of the same, having been used, being in use, or prepared for use in the conduct, transaction or performance of any business, transaction, work, duty or function which was conducted, transacted or performed by or under the authority of the constitution or the laws of this state, or the ordinances or mandates or orders of any municipal or parish government * * * or concerning or relating to the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state are public records, subject to the provisions of this chapter except as hereinafter provided." (Emphasis by the Court.)
The documents at issue were prepared by Department heads pursuant to Section 8.07 of the City-Parish Charter which provides:
"SECTION 8.07. Departmental Estimates. The head of every department, office or agency receiving financial support from the parish council or the city council shall file with the director of finance, not later than the tenth day in October in each year, estimates of revenue cash receipts to be received by that department, office or agency for or on account of the parish, city, or any district, and of the expenditures of that department, office, or agency for the ensuing year. Such estimates shall be submitted upon forms furnished by the director of finance and shall contain all information which the Mayor-President shall require. The Mayor-President, with the assistance of the director of finance, shall review these estimates and revise them as he may deem advisable."
In contending that the reports are not public records, Appellees rely upon Section 8.13 of the City-Parish Charter which reads as follows:
"All the budgets and supplementary schedules submitted by the mayor-president shall be public records and shall be open to inspection in the office of the parish clerk during regular business hours. The budget message and the current expense and capital budgets shall be published in the official journal of the parish not later than the sixth day following their submission, togther with notice of public hearings therein to be held not later than the fourteenth day following such publication. (As amended November 8, 1966.)"
Appellees suggest that since Section 8.13 expressly provides that the Mayor's budget and all supplemental documents shall be public, said documents do not become public until the budget is prepared by the Mayor and adopted by the governing authority. According to Appellees, after adoption of the budget, Appellant and any other interested party is entitled to access to the documents in question.
The trial court did not directly determine whether the documents were public documents. *836 In essence the lower court held that if the documents were public, certain administrative considerations dictated delay of the right to public examination until after the budget was adopted by the governing authority. In effect, the lower court determined that to make the documents public before final adoption of the budget would subject the governmental authorities to unwarranted pressure from groups or interests favoring or opposing expenditure of public funds for certain purposes. On this ground, the court concluded that to deny the right of examination and inspection at this time would merely defer the right of examination which delay was justified in the public interest.
LSA-R.S. 44:1 et seq., was obviously intended to implement the inherent right of the public to be reasonably informed as to the manner, basis and reasons upon which governmental affairs are conducted. Section 1(A), hereinabove set forth, clearly provides that documents, etc., which have been used, are being used or which were prepared for use in the conduct of public business, are public records.
Numerous exemptions are contained in the statute. Section 44:1, subd. B exempts, under certain circumstances, electric logs filed with the Commissioner of Conservation in connection with off shore wells. Section 44:3 exempts certain records of the attorney general, district attorneys, sheriffs, police departments, marshals, investigative and intelligence agencies. These exemptions are clearly designed to protect confidential sources of information and insure that undue publicity will not prejudice pending criminal prosecutions. Section 44:4 exempts certain tax returns and information. Records of the Governor, except those pertaining to money or financial transactions handled by the Governor, are exempt by the provisions of Section 44:5. Hospital records, charts and other records kept on patients, by public hospitals and similar institutions, are likewise exempt by Section 44:7.
The right of the public to examination of public documents and the duty of custodians of such records to permit access thereto is expressly provided by Section 44:32, which recites:
"All persons having custody or control of any public record shall present it to any person who is authorized by the provisions of this Chapter and who applies during the regular officer hours or working hours of the person to whom the application is made. The persons in custody or control of a public record shall make no inquiry of any person authorized by this Chapter who applies for a public record, beyond the purpose of establishing his authority; and shall not review nor examine or scrutinize any copy, photograph or memoranda in the possession of any authorized person; and shall give, grant and extend to the authorized persons all reasonable comfort and facility for the full exercise of the right granted by this Chapter; provided, that nothing herein contained shall prevent the lawful custodian of a record from maintaining such vigilance as is required to prevent alteration of any such record while same is being examined by a person under the authority of this section; and provided further, that notwithstanding the requirements contained hereinabove, examinations of records under the authority of this section must be conducted during regular office or working hours. If the chief of the office or the person next in authority among those present in the office shall authorize examination of records in other than regular office or working hours, the persons designated to represent the lawful custodian of such record during such examinations shall be entitled to reasonable compensation to be paid to them by the office, agency or department having lawful custody of such record, out of funds provided in advance by the person examining such record in other than regular office or working hours. Amended by Acts 1968, No. 473, § 1."
*837 Appellee's claim that the City-Parish constitutional charter preempts the field involved herein is without merit. It is settled jurisprudence that the City-Parish Charter involved herein does not divest the state of all control over the City-Parish Government of the City of Baton Rouge, Parish of East Baton Rouge. See Ware v. Cannon, La.App., 248 So.2d 19; City of Baton Rouge v. Mahnken, 260 La. 1002, 257 So.2d 690; La Fleur v. City of Baton Rouge, La.App., 124 So.2d 374. The above cases clearly hold that the authority vested in the City-Parish does not divest the state of authority to control the powers and duties of the governmental agency. The authority primarily conferred upon the City-Parish is that of control over the structure, organization, distribution of powers and internal arrangement of the powers and functions vested in the City-Parish Government by the state constitution. For example, Section 3(a) provides that subject to the constitution and laws of the state with respect to the powers and functions of local governments, as distinguished from structure, organization and distribution and redistribution of such powers and functions, the local government authorized may provide for certain things, an enumeration of which follows. We also note with interest that Section 1.03 of the adopted charter expressly states that the City of Baton Rouge shall continue its existence as a political subdivision of the state.
The duty to allow examination and inspection of public documents, as defined by state statute, addresses itself to the rights, powers and duties of government, not structure, organization or distribution of authorized powers and functions.
Sections 8.07 and 8.13 of the City-Parish Charter do not render subject documents nonpublic until such time as the budget is adopted by the govering authority. Said charter provisions do not purport to constitute a general classification or definition of public records. Rather they are designed merely to insure that the budget and all supporting documents shall be published and made public for the information of the populace. If these provisions purported to do otherwise they would be void because of their conflict with the Public Records Law which applies to the records of all governmental agencies and state subdivisions save those therein expressly excepted.
Appellees suggest that if LSA-R.S. 44:1 et seq. is applicable, nevertheless subject documents are not public because the statute is couched in the past tense and consequently applies only to documents prepared or used in connection with completed transactions. This argument is based on the language "... which was conducted, transacted or performed ...." appearing in Section 44:1. On this basis, Appellees contend the budget has not yet been adopted therefore the documents in question are not public documents.
The leading case on the subject matter is MacEwan v. Holm, 226 Or. 27, 359 P. 2d 413, 85 A.L.R.2d 1086, which involved data relating to nuclear radiation sources collected by employees of the State Board of Health in compliance with a state statute. The Oregon public records law qualified the right of inspection by limiting said right to lawful purposes. The court exhaustively reviewed the authorities on the subject, and concluded that because of the inherent right of the public to know, statutes of this nature must be liberally interpreted so as to extend the right of examination to all writings in the custody of public officials. Nevertheless, the court recognized that the rights of citizens to examine and inspect public documents must be balanced with the right of public officials and employees to carry on the business of the public without undue interference. On this basis, the court concluded the right to examination is not absolute and unqualified, but must be determined in the light of each individual case. We note also that the Oregon court rejected the concept of a distinction between writings representing tentative actions and *838 documents containing ultimate decisions. The court further noted that this distinction is inconsistent with the principles underlying public documents laws and operates as a device which can effectively impede the right of examination of public documents. Applying the foregoing principles, the Oregon court held that the data was within the purview of the Oregon statute.
Appellees cite and rely upon Sanchez v. Board of Regents of Eastern New Mexico Univ., 82 N.M. 672, 486 P.2d 608, wherein request was made to examine a list of proposed faculty salaries. The list consisted of the names of proposed faculty members, itemized by colleges and departments, with the proposed salary set opposite each name. The statute sought to be enforced in Sanchez, above, was somewhat analogous to our own. Sanchez rejected the right of examination until the matter of salaries was concluded. The decision was based in part on the fact that the records were not required by law to be kept and partly on the ground that the law applied only to documents upon which ultimate decision had been reached.
We find that the rule espoused in MacEwan, above, is eminently sound and adopt it in all respects save that we disagree that the right to examination may be deferred if a document is in fact a public document. We so conclude because the right of the public to be adequately informed is of fundamental importance. In addition, we believe that statutes providing for examination of public records must be liberally interpreted so as to extend rather than restrict access to public records. Lastly, and more importantly, we believe that the wording of our statute indicates legislative intent to make all public records open to the public. We also find no evidence of the intent of the legislature to qualify this right in any manner. In this regard, we note that the statute provides that all records, writings, memoranda and papers, etc. relative to any business transaction required by law is a public document open to inspection. The language employed is extremely broad and all inclusive.
We disagree with Appellee's contention that the statute is couched in language such that its application is limited to documents prepared in connection with concluded transactions. The phrase "duty or function which was conducted, transacted or performed" does not refer to documents prepared in connection with completed transactions, but rather to the following clause which specifies the authority under which documents are prepared, namely, "... the Constitution or the laws of this state, or the ordinances or mandates or orders of any municipal or parish government...." Any contrary interpretation would, in our view, render the act virtually meaningless.
We conclude that the Public Documents Law is applicable to the records involved in this litigation.
Appellee's claim of unconstitutionality is without merit. Appellee's contention that the City-Parish is an executive branch of state government co-equal with the state legislative, judicial and executive branches is utterly without merit. That the City-Parish Charter is provided for in the State Constitution does not negate the fact that the City-Parish Government exists as a creature of the state. The Charter itself expressly so recognizes and unequivocally states that the City-Parish remains subject to general state laws regulating the powers, duties and functions of municipalities and local governmental agencies.
Neither does the City-Parish Government have standing to question the validity of the Public Records Law on the ground that it is vague or that Amendment XIV guaranteeing equal protection of laws and freedom from discrimination have no application to political subdivisions of a state. Said guarantees apply basically to individuals and private corporations having *839 the status of individuals in the eyes of the law.
The pertinent rule is stated in C.J.S. Verbo Constitutional Law, Volume 16A, § 508, page 331, as follows:
"A municipality or other agency or political division of a state is not a `person' within the provisions requiring equal protection of the laws; and legislation pertaining to agencies of the state or matters of government does not deny equal protection of the laws where it makes no arbitrary or unreasonable classification or discrimination and treats alike all within the same class or similarly situated.
A municipality, county, or other public corporation or governmental agency created and controlled by a state is not a `person' entitled, as against the state, to the equal protection of the laws. A fortiori, the state itself is not a `person' and is not protected against its own acts by the constitutional prohibition of denial of equal protection of the laws. The prohibition is not intended to hamper the states in the discretionary exercise of their appropriate sovereign governmental powers unless substantial private rights are arbitrarily invaded; and, as in other cases, statutes or regulations pertaining to public agencies or matters of government do not deny equal protection of the laws where they make no discrimination, or any discrimination or classification which they make is not arbitrary or unreasonable, and all within the same class or similarly situated are treated alike."
The principle that local governmental agencies need not necessarily be treated alike, and that the equal protection clause of the XIVth Amendment to the United States Constitution applies only to persons, as such, has been expressly recognized by the United States Supreme Court. See Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256.
Our own courts have also expressly recognized and applied the foregoing rule. In Warren County, Mississippi v. Hester, 219 La. 763, 54 So.2d 12, the Supreme Court expressly held that the constitutional provision of due process is without application to the political subdivisions of a state.
In Penny v. Bowden, 199 So.2d 345 (Third Circuit, 1967), it was held that neither the due process nor equal protection clauses of the Federal and State Constitutions are applicable to political subdivisions of the state.
Moreover, the discrimination urged by Appellees is nonexistent in this instance. All municipalities are treated alike under the statute. Where discrimination is urged, it must be established that discrimination exists between the same classes. It is well established constitutional law that discrimination predicated upon reasonable class distinction does not violate the fundamental right to equal protection of the law. Rinaldi v. Yeager, 384 U.S. 305, 88 S.Ct. 1497, 16 L.Ed.2d 577 (1966); Louisiana & Arkansas Railway Co. v. Goslin, 258 La. 530, 246 So.2d 852 (1972).
The judgment of the trial court is reversed and judgment rendered herein in the form of a writ of mandamus, ordering, directing and commanding the Honorable B. H. Roussel, Director of Finance, and the Honorable Woodrow W. Dumas, Mayor-President, City of Baton Rouge-Parish of East Baton Rouge, to permit and allow plaintiff, Paul M. Bartels, to examine and inspect the documents involved in this litigation, pursuant to the provisions of LSA-R.S. 44:1 et seq., immediately upon the finality of this judgment. All costs for which Appellees are amenable in law shall be paid by Appellees.
Reversed and rendered.