ELLIS, Judge.
Milford L. Fryar, a taxpayer and citizen of the State of Louisiana, and a reporter for Capital City Press in Baton Rouge, requested and was denied permission to view an investigatory file of the Attorney General relative to certain members of the Ascension Parish Police Jury. He brings this suit under the provisions of R.S. 44:1 et seq., alleging that the file is a public record under the terms thereof, and praying that the court order that he be permitted to inspect and/or copy the said file. After trial on the merits, his suit was dismissed, and plaintiff has appealed.
Plaintiff was denied permission to view the file on two bases, as set forth in a letter dated August 29,1977, from Ellis C. Magee, Executive Assistant Attorney General:
*1302 “(1) Article 434 of the Code of Criminal Procedure requires persons having confidential access to information concerning grand jury proceedings to keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury; and
“(2) Much of the information contained in the report was derived from confidential sources, and such information is privileged under La.R.S. 44:3 A(2).
R.S. 44:1 A provides:
“All records, writings, accounts, letters and letter books, maps, drawings, memo-randa and papers, and all copies or duplicates thereof, and all photographs or other similar reproductions of the same, having been used, being in use, or prepared for use in the conduct, transaction or performance of any business, transaction, work, duty or function which was conducted, transacted or performed by or under the authority of the Constitution or the laws of this state, or the ordinances or mandates or orders of any municipal or parish government or officer or any board or commission or office established or set up by the Constitution or the laws of this state, or concerning or relating to the receipt or payment of any money received or paid by or under the authority of the Constitution or the laws of this state are public records, subject to the provisions of this Chapter except as hereinafter provided.”
R.S. 44:3 A provides:
“Nothing in this Chapter shall be construed to require disclosure of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, marshals, investigators, correctional agencies, investigative agencies, or intelligence agencies of the state, which records are:
(1)Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled; or
(2) Records containing the identity of a confidential source of information or records which would tend to reveal the identity of a confidential source of information; or
(3) Records containing security procedures, investigative training information or aids, investigative- techniques, investigative technical equipment or instructions on the use thereof, or internal security information.”
The record reveals that on March 26, 1976, Aubert Talbot, District Attorney in Ascension Parish, requested prosecutory assistance in a Grand Jury investigation involving the Ascension Parish Police Jury. As a result of the request, Dennis Weber, an attorney, and Glenwood L. Bullard, an investigator, were assigned to the investigation. Mr. Bullard, with the assistance of three other investigators, interviewed 11 witnesses, while the Grand Jury was in session. In April, 1976, the Grand Jury pretermitted the matter, and was thereafter dissolved. Subsequent thereto, at the request of some Ascension Parish businessmen, the Attorney General agreed to continue the investigation.
Mr. Bullard, with the assistance of one man, finally completed the investigation in February, 1977, and the results were furnished to the District Attorney on March 15, 1977. During the entire investigation, 52 individuals were interviewed, some of them more than once. Fourteen of these individuals were assured by Mr. Bullard that anything they said would be held in confidence, except for necessary appearances in court or before a Grand Jury.
Mr. Bullard explained that, if a witness was reluctant to testify, he would be assured that his information would be held in strictest confidence, and that there was a specific state law which prohibited making this information available to anyone. However, if a witness was willing to talk, and expressed no reservations about testifying, no such assurance was given. All reports on these interviews are considered confidential by the Attorney General, whether as *1303 surances of confidentiality were given or not. There is nothing in any interview report to indicate whether the informant gave information in confidence or not.
When Mr. Talbot was given the results of the investigation, he expressed the opinion that there was no information therein which had not already been given to the Grand Jury, and the matter was closed.
In the case of Bartels v. Roussel, 303 So.2d 833 (La.App. 1st Cir. 1974), we said:
“. . . the right of the public to be adequately informed is of fundamental importance. In addition, we believe that statutes providing for examination of public records must be liberally interpreted so as to extend rather than restrict access to public records. Lastly, and more importantly, we believe that the wording of our statute indicates legislative intent to make all public records open to the public. We also find no evidence of the intent of the legislature to qualify this right in any manner. In this regard, we note that the statute provides that all records, writings, memoranda and papers, etc. relative to any business transaction required by law is a public document open to inspection. The language employed is extremely broad and all inclusive.”
Another important policy consideration is the necessity of permitting law enforcement agencies to maintain in confidence the identities of their informants, so as to overcome the natural reluctance of persons to give information relative to crimes.
With respect to the 11 persons who gave information while the Grand Jury conducting the investigation was still in session, we think it clear that their identities and testimony are secret under the provisions of Article 434, supra.
The same is true as to the 14 persons who were assured that the information given by them would be held in confidence. Under R.S. 44:3 A(2), supra, we consider them to be confidential sources of information. However, we do not believe that the Attorney General can, as a matter of policy, designate a willing informant as a confidential’ informant and thereby bring his identi-' ty within the scope of R.S. 44:3 A(2).
We think it clear from the record that the investigation conducted after the Grand Jury was dissolved was carried out at the request of private citizens of Ascension- Parish, and not at the request of the District Attorney or the Grand Jury. Although we believe it was intended that the information uncovered by this subsequent investigation would ultimately be presented to a Grand Jury, the fact is that it was not. Under these circumstances, we cannot say that the information revealed thereby was “directly connected with” a meeting of the Grand Jury. We hold that the information is subject to public scrutiny under the Public Records Law. R.S. 44:1, et seq.
The judgment appealed from is therefore set aside, and the case remanded to the trial court, with instructions to order that plaintiff be permitted to inspect and copy all of the said file, except for the statements taken from the witnesses interviewed while the Grand Jury was in session; and the statements taken from the witnesses who testified in confidence; and any other statements or reports which contain the identity of a confidential source of information, or which tend to reveal the identity thereof. The trial judge shall examine the entire file in camera, and conduct whatever hearings are necessary, in his discretion, to determine and protect the confidentiality or secret nature of the sources of information contained therein.
The defendant shall pay all costs for which he may be liable under the law.
Reversed and remanded, with instructions.