Dear Mr. Walker:
You have requested an opinion from our office on the legality of a contract proposal submitted to the University of Southwestern Louisiana by a local music company and a manufacturer, referred to herein as the "Agreement". You have specifically raised three inquiries regarding this contract, stated as follows:
 (1) Must the university comply with the provisions of the Louisiana Procurement Code, LSA-R.S. 39:1551, et seq., concerning competitive bidding, or may the parties proceed by negotiation?
 (2) May the university legally allow another entity to use the name of the school for advertising and other promotional purposes?
 (3) May the university legally allow access to student, faculty, and alumni mailing lists reflecting only names and mailing addresses?
In response to your first question, we note that there is no expenditure of public funds under the terms of this contract, as the pianos are loaned to the school under the provisions of Section 1 of the Agreement. The bidding requirements of the Louisiana Procurement Code (LSA-R.S. 39:1551, et seq.) are applicable only to "every expenditure of public funds . . . by this state . . . under any contract for supplies, services, or major repairs defined herein . . .". LSA-R.S. 39:1554(B). ("Supplies" are defined in part as "all property" under LSA-R.S.39:1556(23), and would include the purchase of pianos for university use.) It would appear then, at least initially, that such a contract is outside the scope of the Procurement Code.
However, the provisions of the Louisiana Procurement Code become applicable where the university elects to purchase the pianos. We bring to your attention language in the Agreement which contemplates this occurrence, as Section 15 allows the university, at the termination of the contract, the right to purchase the pianos at a "low discounted price" or as negotiated between the parties. Section 15 of the Agreement is void if its implementation is violative of the requirements imposed on the university by state law.
If the university elects to purchase the pianos, then the price of the pianos at the time of the termination of the contract would be determinative of whether the university need seek competitive bids, or proceed by negotiation. We refer you to the Governor's Executive Order, a copy of which is enclosed, which states threshold requirements for purposes of the application of the Louisiana Procurement Code.
In response to your second question, we find no statute or other authority which would disallow the use of the university name for promotional purposes by the dealer or manufacturer. However, reference is made to the case of City of Port Allen v. Louisiana Municipal Risk Management, Inc., et. al., 439 So.2d 399
(La. 1983), in which the court determined that the constitutional prohibition against the donation of public funds is violated whenever "the state or political subdivision seeks to give up something of value when it is under no obligation to do so." 439 So.2d at 401; see also LSA-Const. Art. VII, § 14. However, we find this contract to be in furtherance of the university's obligation to provide for the education of its students, and further find the "expenditure" to be proportionate to its cost. See City of Port Allen, supra.
Your third question concerning the release of mailing lists of students, alumni, and faculty prompts an examination of the provisions of the Public Records Act, LSA-R.S. 44:1, et seq. This Act is reflective of a constitutional mandate establishing the right of the public to "examine public documents, except in cases established by law." LSA-Const. Art. XII, § 3.
The university is defined as a "public body" for purposes of he Act. LSA-R.S. 44:1(A)(1). Generally, any person of the age of majority may inspect, copy, or obtain a reproduction of any "public record". LSA-R.S. 44:31; LSA-R.S. 44:32. The Act further defines "public records" as:
 "All books, records, writings, accounts, letters, and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers . . . having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business . . . performed by or under the authority of the constitution or laws of this state . . ." LSA-R.S. 44:(A)(2); (Emphasis added).
The Public Records Act must be liberally interpreted so as to extend rather than restrict access to public records by the public. Bartels v. Roussel, 303 So.2d 833 (La.App. 1st Cir. 1974). However, access to public records may be denied where there is a constitutional, statutory, or jurisprudential exemption from disclosure. Gannett River State Publishing v. Hussey, 557 So.2d 1154 (La.App. 2nd Cir. 1990).
All citizens enjoy a constitutional right to privacy, which if applicable, would protect certain information from disclosure. Louisiana Constitution Art. I, § 5 states, in part:
 "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable . . . invasions of privacy."
The jurisprudence reflects that the constitution prohibits only "unreasonable" invasions of privacy. This right of privacy is not absolute; it is qualified by the rights of others. This right is further qualified by society's right to be informed about legitimate subjects of public interest. In the case of Webb v. City of Shreveport, 371 So.2d 316 (La.App. 2nd Cir. 1979), the plaintiff brought a successful action to compel a municipality to reveal the names and addresses of city employees. The court in Webb concluded:
 "The fact that a municipality or its employee labels the name or address of an employee as having been furnished to become a part of a confidential personnel record, does not elevate the name or address to the status of being a constitutionally protected private thing. . . ." Webb, 371 So.2d at 318 and 319.
We find no constitutional prohibition against the release of mailing lists reflecting names and addresses of the students of the university. See recently released Attorney General Opinion Number 93-419, enclosed. We also note that, under federal law, a university may release student directory information such as names, addresses, telephone listings, date and place of birth, and major fields of study. See20 U.S.C. § 1232g, et seq., i.e. the "Buckley Amendment".
Similarly, we find neither the faculty nor the alumni have any reasonable expectation of privacy which would compel the university to withhold a mailing list containing names and home addresses. However, please note that a faculty member, as a public employee, may request the university to hold confidential his home telephone number and home address. LSA-R.S. 44:11. If such a request has been made by a faculty member, such information must be excised from the mailing list prior to disclosure.
We hope the foregoing is helpful to you and responsive to your request. Should you have other inquiries in which we may be of assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
RPI/KLK/0260E