Dear Mr. Labat:
This office is in receipt of your opinion request directed to Attorney General Richard P. Ieyoub. We are also in receipt of correspondence from your Assistant District Attorney Charles Lorio, Jr., initiating the request, in compliance with the procedures of this office.
You ask questions which require review of the Public Records Act, LSA-R.S. 44:1 et seq. We restate and respond to the questions presented in your letter.
 (1) When requests are received for numerous items from a particular file, which file also contains other items not requested, is there authority for turning the entire file over and allowing the requester to review it?
 (2) Is there authority for the [requestor] to reasonably request specific bids, contracts, etc. being sought?
 (3) Can the custodian charge a reasonable fee for the cost of having an employee overseeing the examination so as to prevent alterations of any record?
 (4) Does the custodian of the public records have the authority to require examination of the public record outside of regular office or working hours?
 (5) Can the custodian charge a reasonable fee for the clerical time required to collect the information requested during working hours or outside regular working hours?
Questions 1 2
Questions one and two are interrelated, and we answer both simultaneously. Also, we assume in question two above that you meant to ask whether the requestor can legally demand access to certain bids and specific contracts; we respond to question two as rephrased.
All records which are maintained by a public body are generally subject to public examination under the provisions of the Public Records Act, LSA-R.S. 44:1, et seq. However, an analysis concerning disclosure requires first a determination that the document to be disclosed is in fact a "public record" as defined by statute. The Act defines "public records" as:
 "All books, records, writings, accounts, letters, and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers . . . having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business . . . performed by or under the authority of the constitution or laws of this state . . ." LSA-R.S. 44:(A)(2); (Emphasis added).
Generally, any person of the age of majority may inspect, copy, or obtain a reproduction of any "public record". LSA-R.S.44:31; LSA-R.S. 44:32. The custodian may not make an inquiry into what forms the basis for the request. The Louisiana Supreme Court in Title Research Corp. v. Rausch, 433 So.2d 1105
(La.App. 1st Cir. 1983); reversed, 450 So.2d 933 (La. 1984) stated:
 "The legislative intent to provide the access in as unrestricted manner as possible is expressed best by R.S. 44:32(A). Any adult member of the public need only request a record, and the custodian must supply it. The custodian may not make any inquiry, with the exception of the age and identity of the borrower, into the reason for the request, nor may the custodian attempt to intimidate any person by requesting to see what information the viewer has extracted from the public records. . . ." 450 So.2d at 937.
Further, the Supreme Court concluded:
 "As a qualified member of the public, [the plaintiff] is entitled to inspect, copy, reproduce, or obtain a reproduction of the requested public records. He has chosen to reproduce the records, in toto, by means of microphotographic reproduction techniques. He has chosen the method, and the clerk-custodian may not inquire into his choice of medium. Nor may the clerk inquire as to the purpose for the large request. A commercial purpose will not justify thwarting the right to copy the public records." 450 So.2d at 938; (Emphasis added).
The custodian has a three-day period in which to make a determination that the record is in fact a public record, should such a question arise. LSA-R.S. 44:32(D) provides:
* * *
 (D) In any case in which a record is requested and a question is raised by the custodian of the record as to whether it is a public record, such custodian shall within three days, exclusive of Saturdays, Sundays, and legal public holidays, of the receipt of the request, in writing for such record, notify in writing the person making such request of his determination and the reasons therefor.
After a determination is made that the request has been properly made, and the record to be disclosed is a public document as defined, further concerns must be evaluated prior to disclosure. Note that the Public Records Act must be liberally interpreted so as to extend rather than restrict access to public records by the public. Bartels v. Roussel, 303 So.2d 833 (La.App. 1st Cir. 1974). Unless specifically exempted, all records, documents, and information used in the performance of any public function are included. Caple v. Brown, 323 So.2d 217 (La.App. 2nd Cir. 1975). Further, the Public Records Act is reflective of a constitutional mandate establishing the right of the public to "examine public documents, except in cases established by law." LSA-Const. Art. XII, § 3.
However, access to public records may be denied where there is a constitutional, statutory, or jurisprudential exemption from disclosure. Gannett River State Publishing v. Hussey, 557 So.2d 1154
(La.App. 2nd Cir. 1990). As an example, note all citizens enjoy a constitutional right to privacy, which if applicable, would protect certain public documents from disclosure. Louisiana Constitution Art. I, § 5 states, in part:
 "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable . . . invasions of privacy."
The jurisprudence reflects that the constitution prohibits only "unreasonable" invasions of privacy. This right of privacy is not absolute; it is qualified by the rights of others. This right is further qualified by society's right to be informed about legitimate subjects of public interest. Gannett, supra.
Constitutional privacy concerns are examined by application of a two-pronged test. Initially, the person that desires the information withheld must have a reasonable expectation of privacy with respect to the information sought. If such reasonable expectation is found, then it becomes necessary to balance the public records disclosure interest against the privacy interest. Gannett, supra. If no reasonable expectation of privacy is found, the inquiry is at an end.
The analysis above was applied in the case of Webb v. City of Shreveport, 371 So.2d 316 (La.App. 2nd Cir. 1979). In Webb, the plaintiff brought an action to compel a municipality to reveal the names and addresses of city employees. Citing the case of Trahan v. Larivee, 365 So.2d 294 (La.Ct.App. 3rd Cir. 1979); writ den., 366 So.2d 564 (La. 1979) as authority, the plaintiff argued that the names and addresses of these employees were furnished by the employees for confidential personnel purposes. Rejecting this argument, the court in Webb concluded:
 "There is a vast difference, however, in personnel evaluation reports and a listing (or computer printout) of names and addresses of employees of a municipality. The fact that a municipality or its employee labels the name or address of an employee as having been furnished to become a part of a confidential personnel record, does not elevate the name or address to the status of being a constitutionally protected private thing. . . . To paraphrase Prosser, complete privacy does not exist except for the eremite in the desert. . . . We have no reasonable expectation of privacy as to our identity or as to where we live or work. Our commuting to and from where we live and work is not done clandestinely and each place provides a facet of our total identity." Webb, 371 So.2d at 318 and 319.
Further state cases examining an individual's right to privacy as weighed against the public's right to know are also applicable herein. See Trahan, supra; the court held city employees' evaluations could not be disclosed because the individual's privacy interest outweighed any public interest in the disclosure; see also Marine Shale Processors, Inc. v. State Department of Health and Hospitals, 572 So.2d 280 (La.App. 1st Cir. 1990); the court recognized the individual's right of privacy guaranteed by the state constitution would prohibit disclosure of the identity of private citizens who participated in a public health study.
In response to your first and second inquiries, and as is readily apparent, it is difficult to give an accurate legal opinion as to whether an entire file must be made available to a requestor without knowing the specific contents of the file. We agree with the advice already given you by counsel Charles Lorio — that the "purpose of the said statutes is to extend, rather than restrict, access to public records by the public . . . the custodian . . . is obligated to make all records available for inspection". Correspondence dated February 5, 1993, attached. We can conclude that where a "broad request" is received, a decision concerning material which must be excised and that material which must be disclosed remains within the discretion of the custodian of the records, exercised in good faith, after consideration of all possible statutory, constitutional, and jurisprudential exemptions. Finally, note that the custodian has a three-day period in which to make a determination that the record is in fact a public record, should a question arise. LSA-R.S. 44:32(D).
Questions 3, 4 5
Generally, LSA-R.S. 44:32 requires the custodian of the records to allow inspection of the records during regular business hours. The custodian is also charged with maintaining "vigilance as is required to prevent alteration of any record while it is being examined". LSA-R.S. 44:32(A). However, in response to your third inquiry, we find no authority for the custodian to charge a fee for his duty to ensure that the records are unaltered by a requestor during an examination made in the course of the regular workday.
In response to your fourth inquiry, the custodian does have authority to require a requestor to make his examination after regular working hours. The custodian may require from the requestor that "funds [be] provided in advance by the person examining such record in other than regular office or working hours" for compensation of the custodian's designee. Reference is made to LSA-R.S. 44:32(A), which provides in part:
 (A) . . . examinations of records under the authority of this Section must be conducted during regular office or working hours, unless the custodian shall authorize examination of records in other than regular office or working hours. In this event the person designated to represent the custodian during such examination shall be entitled to reasonable compensation to be paid by them by the public body having custody of such records, out of funds provided in advance by the person examining such records in other than regular office or working hours. (Emphasis added).
The law further provides no fee shall be charged to any person to examine or review any public records. LSA-R.S. 44:32(C)(3). The custodian may establish and collect reasonable fees for making copies of public records. LSA-R.S. 44:32(C)(1).
Your fifth inquiry raises the issue of whether the public body has a duty to respond to a request which requires either the public body to sort the information in a special way or run a special report. In Bartels, supra, the court stated that the rights of citizens to examine and inspect public documents "must be balanced with the right of public officials and employees to carry on the business of the public without undue interference." 303 So.2d at page 837. Absent in the Public Records Act is any language requiring the custodian to run any extraordinary errand or report beyond the presentation of documents in readily identifiable form, which makes moot the issue raised in your fifth inquiry of whether the custodian may properly charge a fee for such service.
Should you have further inquiries, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
RPI/KLK/0279E