Dear Ms. Coverick and Mr. Winkler-Schmit:
Our office received a request on behalf of the Broadmoor Neighborhood Improvement District ("BID") and the Broadmoor Improvement Association ("BIA") concerning compliance with the Public Records Act, La.R.S. 44:1 et seq.
According to your request, the BIA is a 501(c)(3) organization which has served the Broadmoor neighborhood since 1970. The BIA has one full-time staff member, two outside contractors, and many volunteers, and the BIA's work is overseen by the BIA board. You have provided that the BIA has leveraged more than $48 million in outside investments since the levee failures following Hurricane Katrina. Additionally, the BIA has brought in more than 13,000 volunteers, rebuilt more than 170 homes, and the current projects include rebuilding a public library/community center, a fine arts and wellness center, and a community health clinic. Further, you indicate the BIA provides social work services. You indicate that these services generate a large number of records, i.e., e-mails, receipts, meeting notes, volunteer coordination, contracts, phone calls, invoices, accounts payable and receivables, pay stubs, counseling session notes, etc. Your request letter takes the position that, with one full time staff member, requiring retention of such BIA records would be burdensome and would deter the group's mission. *Page 2 
The BID was created by Act 554 of the 2010 Louisiana Legislative Session, which enacted La.R.S. 33:9091.17. As described by La.R.S. 33:9091.17(C), it was established "for the purpose of promoting quality of life initiatives of the Broadmoor Improvement Association (BIA) that cater to residents living in the area included within the district and encouraging the beautification and overall benefit of the district as defined in the Redevelopment Plan for Broadmoor." The BID is governed by the nine-member board governing the BIA. La.R.S. 33:9091.17(D)(1). La.R.S. 33:9091.17(D) further provides that members of the board shall be elected from subgroups of the BID, as provided by the district's by-laws.[1]
La.R.S. 33:9091.17(F) specifically authorizes the governing authority for the city of New Orleans to impose and collect a parcel fee within the district. Your request letter indicates that district residents voted in favor of levying a flat $100 per-parcel fee, which funds the BID. Recently, the City of New Orleans sent the parcel-fee funds to the BID. Further, you state that the funds have been deposited in a bank account for the BID, and that the BID is currently devising a funding request mechanism for approving specific beautification projects to be funded through parcel-fee dollars. Your letter indicates that the majority of time spent by board members is devoted to BIA initiatives, which are funded by both public and private foundations.
The BIA and BID wish to clarify the requirements for compliance with state law regarding which records are "public records" as understood by the Public Records Act, and must be maintained in accordance with a retention schedule. Your letter indicates that the Board currently separates improvement district business from association business, and further suggests that requiring the BIA as well as the BID to comply with the Public Records Act would divert energy and resources away from improving the district.
"Public bodies," as defined by La.R.S. 44:1(A)(1), include:
 any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, or any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function, or an affiliate of a housing authority.
As the above definition clearly includes "district" and the statute creating the BID designates the BID as a political subdivision of the state, it is clear that the BID is a "public body" as envisioned by the Public Records Act. As previously indicated, the BIA *Page 3 
is a 501(c)(3) organization created for improvement of the Broadmoor neighborhood. As there is no indication that the BIA is designated as an entity to perform a governmental or proprietary function, the BIA is not a "public body" as described by the statute. However, this does not end the inquiry with respect to records maintained by the BIA, as described in more detail below.
The definition of "public record" provided by La.R.S. 44:1(A)(2)(a) provides:
 All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records", except as otherwise provided in this Chapter or the Constitution of Louisiana.
The identical membership of the governing board of the BIA and BID makes any distinction between BIA and BID under the Public Records Act an artificial one. As specified by statute, the BID is governed by the nine-member BIA Board. This office has looked at other similarly created and situated districts, see La.R.S. 33:9091.1-16, and the BID is the only such district which is governed by the same exact board as the association affiliated with it. Although several districts allow for the affiliate association to appoint some members to the district board, and some allow for the president of the affiliate association to serve on the district board, each of the sixteen other similarly situated districts have avoided potential confusion regarding applicability of the Public Records Act in two important ways. The first is that the other similarly created districts allow other interested parties besides the affiliate association to serve or appoint individuals to the board governing that particular district, i.e. the mayor, the member or members of the Louisiana House of Representatives representing the area which comprises the district, the member or members of the Louisiana Senate who represent the area which comprises the district, and/or the council member or council members who represent the district. The second distinction is that, of the sixteen other similarly created and situated districts mentioned above, not one other district makes mention of the affiliate association in its statutorily declared purpose. La.R.S. 33:9091.17 is the only one that directly links the district to the affiliate association in both its purpose and the entire membership of its governing board. *Page 4 
You have stated that the broad vision of the BID is the reason for the BID and the BIA to be governed by the same board, such vision including beautification and crime prevention, and also encompasses senior programs, education, counseling, community centers and the arts. Further, you have also asserted that the fact that the BID's mission is directly aligned with the BIA's mission, as opposed to the BID's mission having a more narrow focus, is reason for having the same board govern the BID and BIA.
Your letter indicates that the Board currently separates BID business from BIA business, and that the BIA serves as a social convener, setting policy and priorities and building consensus among residents, while the BID supports implementation. As the BIA's budget, approximately $1.2 million, is significantly larger than the BID's, approximately $127,000, it is your position that the BIA should only be required to make available those records which pertain to public funds. However, as described by La.R.S. 44:1(A)(2)(a), the definition of public records makes clear that "public records" are those records which have been used, are being used, or which were prepared for use in the conduct of public business.[2] In light of the specific reference to the initiatives of the BIA in the statutory description of the purpose of the BID, it is difficult to distinguish between what is "public business" of the BID and what is "public business" of the BIA. Determining what constitutes "public business" of the BID necessarily requires a fact-specific analysis of the initiatives of the BIA being pursued by the BID. Given the intrinsic connection between the BID's purpose and the BIA and the identical membership of the two, this office cannot make a bright-line determination as to which records of the BIA have no relation to initiatives the BID is pursuing.
In light of the above, this office must conclude that, at a minimum, some records of the BIA will be subject to production under the Public Records Act unless the records fall within a clear exception to production or the BIA can make a clear distinction as to how the records have no relation to BID business, a distinction admittedly complicated by the fact that the same individuals serve as members of the BID and BIA boards. For this reason, we simply cannot agree with your position that only BIA records pertaining to public money are subject to retention. Rather, the BID's "public records" may include records of the BIA relating to initiatives which were ultimately promoted by the BID, such records which may include documents other than just financial ones.
Your letter states that there are many records existing, i.e., receipts, meeting notes, volunteer coordination, contracts, phone calls, invoices, accounts payable and receivables, pay stubs, counseling session notes, etc., which would become burdensome for the BID to retain should this opinion take the position that the BIA's records are also subject to retention guidelines. As described by La.R.S. 44:36(A),
 [a]ll persons and public bodies having custody or control of any public record . . . shall exercise diligence and care in preserving the public record *Page 5 
for the period or periods of time specified for such public records in formal records retention schedules developed and approved by the state archivist and director of the division of archives, records management, and history of the Department of the State.
Although we sympathize with your concerns about the limited staff and resources of the BIA, you can minimize the burden placed on you in maintaining any records relating to initiatives of the BIA promoted by the BID by working with the state archivist in developing a records retention schedule which identifies the various types of records maintained by the BID and allows for minimal maintenance of those records which have little administrative value to the public agency as well as ensure preservation of vital records.[3] In preparing the draft retention schedule, the public body should conduct adequate research to determine the length of time each record series needs to be maintained based on its administrative, legal fiscal and historical or informational value. LAC Title 4, Part XVII, § 305.[4] As described by the Louisiana State Archives Management Handbook, [5] most records possess temporary value and can be discarded as they become unnecessary, providing examples such as invoices, accounts payable, canceled checks, general correspondence, bank statements, and general memoranda. Careful construction of a records retention policy will minimize the burden on the BID in maintaining those records which must be maintained.
In conclusion, we recommend the BID develop a records retention policy with the assistance of the Archives Division of the Louisiana Secretary of State, as described by La.R.S. 44:36, for the maintenance and retention of its records. As the membership of the Board governing the BID is identical to the Board governing the BIA, and the purpose of the BID is to promote quality of life initiatives of the BIA, it is the opinion of this office that there is an overlap of records of the BIA and BID which qualify as "public records" under La.R.S. 44:1. Making a determination as to whether or not a record is a "public record" as defined by La.R.S. 44:1 requires a fact-specific inquiry into the nature of the particular record at issue, more specifically, whether such record is related to a quality of life initiative promoted by the BID. *Page 6 
We hope that this opinion has adequately addressed the legal issues you have raised. If our office can be of any further assistance, please do not hesitate to contact us.
 With best regards,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY:__________________________
 Emalie A. Boyce
 Assistant Attorney General
 JDC: EAB
[1] Please note that this opinion does not address whether election of the membership of the BID board as described by La.R.S. 33:9091.17 is consistent with the BIA's articles of incorporation regarding selection of the Board of Directors for the Association, as described by La.R.S. 12:224, as such is not the subject of this opinion request.
[2] Bartels v. Roussel,303 So.2d 833, 836 (La.App. 1 Cir. 1974).
[3] "Vital records" includes any record essential to rather or both the resumption or continuation of operations, to verification or re-creation of the legal and financial status of government in the state, or to the protection and fulfillment of obligations to citizens of the state. La.R.S. 44:402(10).
[4] Administrative rules regarding Records Management Policies and Practices have been adopted by the Department of State, Office of the Secretary of State, Division of Archives, in accordance with La.R.S. 44:405 and with the Administrative Procedure Act, La.R.S. 49:950 et seq. A copy of such administrative rules is available at http://www.sos.louisiana.gov/Portals/0/archives/pdf/recmgt.pdf (last accessed August 1, 2011).
[5] Available at http://www.sos.louisiana.gov/Portals/0/archives/pdf/rm-handbook.pdf
(last accessed August 2, 2011).